Hancock vs. Chicot County.

---

## HANCOCK VS. CHICOT COUNTY.

1. COUNTY: *Power of to subscribe to stock of railway companies.*

A county or other municipal corporation has no power, independently of an express grant of authority, to subscribe for stock in a railway company and issue bonds therefor.

Sec. 52, of art. iii., ch. 101, of Gould's Dig., provided that counties having or controlling internal improvement funds, granted to them by the State, might subscribe to the capital stock of any valid and duly organized railroad company; this statute conferred no general authority on the counties to subscribe for stock on railway companies: the power given was to subscribe the internal improvement fund. The act contemplated that the bonds should be issued on the credit of that fund, to which alone the holders of the bonds could look for payment; and bonds issued by a county independently of the limitations contained in the act are void.

Municipal bonds issued without authority, although negotiable in form, are void in the hands of an innocent holder.

APPEAL from *Chicot* County.

Hon. THEODORIC F. SORRELLS, Circuit Judge.

*Reynolds,* for appellant.

TURNER, J.:

The record in this cause shows that at the May Term, 1873, of the Board of Supervisors of Chicot County, the appellant presented his petition to the board, stating in substance that he was the holder of a certain bond of Chicot County issued to the Mississippi, Ouachita and Red River Railroad Company, under an order of the County Court passed at the April Term, 1860, bearing date May the 1st, 1860, for the sum of $1000, bearing 8 per cent. interest, payable annually, and which was by said railroad company, by its secretary and treasurer endorsed in blank, and praying for an order directing said bond to be paid.

It further appears, that at the same term of the court, the petition was overruled, and the said claim disallowed, whereupon the appellant appealed to the Circuit Court.

That at the September Term, 1873, of the Circuit Court, the appellee filed its answer to the petition, stating, in substance, that the appellee does not owe to the said appellant the said sum of $1000, with the interest thereon, and that the alleged paper purporting to be a bond of Chicot County, is not the bond of appellee, that there is no consideration therefore, and that the appellee did not promise to pay the same.

That at the January Term, 1874, of said Circuit Court, the appellee filed an amended answer to the said petition, alleging that the appellee is not bound to pay said bond, or any part of it.

*First*—Because the County Court of Chicot County was not authorized by law, at the time said bond was issued, to use the credit of the county in payment of the subscription to the capital

stock of a railroad company, or to issue the bonds of said county in payment thereof.

*Second*—That said bond is not obligatory upon Chicot County, in its political character, but if paid at all, must be paid out of the internal improvement fund of said county. That the internal improvement fund is a fund set apart by the laws of the State for specific purposes, that the County Court of Chicot County was authorized by law to use and subscribe to the capital stock of a railroad company, out of the internal improvement fund of said county, but said county was not authorized and had no authority of law to subscribe to the capital stock of a railroad company, or to make said county responsible in her political character for bonds issued for the payment of subscription to the capital stock of any railroad company. That said bond was issued for the payment of the subscription to the capital stock of the Mississippi, Ouachita and Red River Railroad Company, and that if said bond is payable at all, it is payable out the internal improvement fund, and out of no other fund.

The answer was demurred to, and at the June Term, 1875, this cause came on to be tried by the court sitting as a jury, whereupon the court found for the appellee, and affirmed the judgment of the court below. Appellant excepted, and filed his motion for a new trial, assigning the following causes:

*First*—That the finding and the decision of the court is contrary to the evidence.

*Second*—That the finding and judgment of the court is contrary to law.

Which motion was overruled by the court, appellant excepted and appealed to this court.

The bill of exceptions shows, that on the trial of this cause, the appellant introduced as evidence the bond of appellee sued upon, which is in words and figures as follows:

37

"No.———.    State of Arkansas.

" Bond of the County of Chicot.    Issued by the order of the County Court at the April adjourned term, 1860.

" 1000 dollars.    The County of Chicot acknowledges to be indebted to the Mississippi, Ouachita and Red River Railroad Company in the sum of one thousand dollars, which sum the said County of Chicot promises to pay to the order of said railroad company, five years after date, with interest thereon at the rate of eight per cent. per annum, payable annually.

" In testimony whereof, I hereunto set my hand as Judge of the County Court of said County of Chicot, and cause the seal of said county to be hereunto affixed, at Lake Village, the first day of May, 1860.

"A. H. DAVIS, as Judge.     [SEAL]

"Attest:   B. F. STEVENSON, Clerk.

" Endorsed:   ED. C. WILSON, Secretary and Treasurer,

"M., O. & R. R. R. R. Co."

It further appears from the record, that divers citizens of Chicot County presented their petition to the County Court, praying for an order that the County Court subscribe the internal improvement fund of said county in the capital stock of the Mississippi, Ouachita and Red River Railroad Company, the object being the early completion of the road through the whole extent of said county, and to a point west of the Mississippi overflow, on the highland of Drew County. Whereupon the County Court on granting the prayers of the petitioners, ordered, adjudged, and decreed, that the said county do subscribe to the capital stock of said railroad company, the sum of $10,000, for the payment of which the internal improvement fund of said county, not already appropriated, was thereby appropriated.

And it was further ordered, adjudged, and decreed, that said County of Chicot shall issue under the hand and seal of the pre-

Hancock vs. Chicot County.

siding judge, attested by the clerk of the court under his official seal, ten bonds of $1000, payable in five or ten years from date, as the County Attorney shall deem most proper, bearing 8 per cent. interest, payable annually.

And it was further ordered, adjudged, and decreed by the court, that all of the internal improvement fund of said county, now in the hands of the internal improvement commissioner, and not already appropriated by the court, or that may hereafter come to the hands of said commissioner, with all interest that may accrue on the same, is hereby set apart and appropriated as a fund to meet and liquidate the principal and interest of said bonds, as the same may become due.

And it is further ordered, adjudged, and decreed, that this subscription is ordered upon the condition that said railroad company will receive said bonds at par, in payment for stock in said railroad company.

Other orders were made, but not material to the decision in this cause.

The record shows settlements made by the County Court with the internal improvement commissioner, on the 5th of November, 1861, and on the 1st of November, 1865, when balances were found in his hands of the internal improvement fund of Chicot County, amounting to $1,185,151.30.

It appears from the record in this cause, that on the 1st of May, 1860, the County of Chicot, in pursuance of the order of the County Court, issued ten $1000 bonds to the Mississippi, Ouachita and Red River Railroad Company, payable five years after date, with interest payable annually, at the rate of 8 per cent. per annum.

The bond sued upon, is one of this issue.

The question which the record presents for our decision, is: Was the County Court of Chicot County authorized by law to

issue the bonds of the county in payment of stock in the Mississippi, Ouachita and Red River Railroad Company?

It is contended by the appellant, that sec. 52, of ch. 101, of Gould's Digest, taken in connection with the orders of the County Court, conferred upon the County of Chicot the authority in question. That section of the act of January, 22d 1855, reads as follows: " It shall be lawful for the County Court of any county, to subscribe to the capital stock of any valid and duly organized railroad company, incorporated under any act of this State, having or controlling internal improvement funds, or credits granted to it by the State, by any existing law, or any law that may hereafter be enacted, and to appoint an agent to represent its interest, give its note, and receive its dividends, and may take proper steps to guard and protect the interests of such county."

By a long and uniform train of decisions, it is fairly settled, that a county or other municipal corporation, has no implied power to subscribe for stock in a railroad company, nor to incur debts or borrow money to enable such corporation to become a subscriber to the stock of a railway company. Such a power must be conferred by express legislative grant. These special grants of authority to municipal corporatoins have multiplied and been frequent during the last quarter of a century, and it is believed great abuses have resulted from improvident grants of special powers to the corporations; and while the courts have been compelled to recognize the validity of these special grants, they have not been slow to condemn the policy of such legislation, and have uniformly held corporations to a strict observance of the limitations of the authority specially granted. Cooley's Con. Lim., 215; Dillon on Mun., Cor. 147, and authorities there referred to.

It will be observed, that the power conferred on the County Courts by sec. 52, of ch. 101, of Gould's Digest, although special, is of limited scope.

The County Court of any county, having or controlling internal improvement funds, or credits, granted to it by the State, may subscribe to the capital stock of any valid and duly organized railroad company.

All the counties in the State were entitled to proportionate shares of the internal improvement fund. But, possibly, in some instances, the fund may have been otherwise appropriated and unavailable, and if so, would a county so circumstanced be entitled to subscribe at all, for stock in a railroad company.

If it was the purpose of the General Assembly to confer upon the counties of the State, by special legislation, the power to subscribe for stock in railroad companies generally, without restriction, and to issue bonds in payment thereof, it would hardly have prescribed conditions of subscription dependent on the county's having internal improvement funds or other credits granted to it by the State.

The petition of certain citizens of Chicot County was an appeal to the County Court in so many words, to subscribe the internal improvement fund of the county to the capital stock of the Mississippi, Ouachita and Red River Railroad Company. The purpose of the petition cannot be mistaken.

The County Court, in granting the prayer of the petition, ordered that the county subscribe to the capital stock of said railroad company, $10,000, for the payment of which the internal improvement fund of the county not already appropriated, was thereby pledged and appropriated. The bonds issued in pursuance of the further order of the court, in payment for stock in said railroad company, are general in their terms and make no express provision for their payment out of the internal improvement fund.

This may have been an oversight on the part of the county officials, or the pledge and appropriation of the internal improvement fund may have been regarded as a sufficient guaranty of their payment out of that fund.

The internal improvement fund of Chicot County was set apart and specially appropriated to the payment of these bonds, and should have been sacredly applied to that purpose. Whether the holders of these bonds have a remedy against the defaulting officials of Chicot County, is a question we are not called upon to decide.

In deciding upon the liability of Chicot County in her corporate capacity for the payment of the bonds, we are brought back to the question, was their issuance authorized by law? We have seen from the whole history of the subscription of Chicot County to the capital stock of the Mississippi, Ouachita and Red River Railroad Company, that the intention of the citizens of Chicot County, who petitioned the County Court; and of the court which made the order for the subscription, was to subscribe the internal improvement fund of that county, and nothing more.

In the light of this history, as shown by the record, we can only regard these bonds as issued on the credit of the internal improvement fund of Chicot County, which was specially pledged and set apart for their payment. But then in view of the failure of the authorities of Chicot County to pay these bonds out of her internal improvement fund, is the county in her corporate capacity in any event bound for the payment of these bonds?

The appellant insists that the power of a county to subscribe for stock in a railroad company was independent of and not restricted by the limitation contained in sec. 52, ch. 101, of Gould's Digest, and we are referred to many authorities. These authorities would be entitled to great weight, were it first shown that Chicot County was authorized to subscribe for stock in the

Mississippi, Ouachita and Red River Railroad Company, and issue bonds therefor payable out of the general funds of the county.

But this power depends upon an express grant of authority, for we have shown that a county or other municipal corporation has no implied power to subscribe for stock in a railroad company, and of course no authority to issue bonds in payment for such stock. But if the authority to subscribe for such stock is expressly given, the right to issue bonds would necessarily follow, for the grant of the authority carries with it by implication the necessary and appropriate means to make it effective.

In the case of *Seybert* v. *City of Pittsburg*, 1 Wall., 272, where the legislature of Pennsylvania had incorporated a railway company, one section of which enacted " that any incorporated city should have authority to subscribe to the stock as fully as any individual." But the act gave no express power to issue bonds in payment of their subscriptions.

It was decided that the power to subscribe authorized the city to issue negotiable bonds in payment of the stock. See also *R. R. Co.* v. *County of Ottoe*, 16 Wal., 667; and *The Evansville, etc. R. R. Co.* v. *The City of Evansville*, 15 Ind. R., 395, to the same effect.

So these and all other authorities referred to by the appellant show most clearly that a county or other municipal corporation has no power, independently of an express grant of authority, to subscribe for stock in a railway company, upon the existence of which alone depend the further authority to issue bonds.

How these authorities benefit the appellant's cause we cannot perceive; for there is no express general authority given by the act of the General Assembly to the counties to subscribe for stock in railroad companies, but the power given is to subscribe the internal improvement fund, and the bonds when issued, are

issued on the credit of that fund, to which the holders of the bonds could alone look for payment.

The power of the counties to subscribe for stock being thus limited and restricted, the County Court had no authority to subscribe for stock and issue bonds payable out of the general funds of the county.

And if said subscription for stock was made upon the unwarranted assumption that the county was authorized to make such subscription and issue stock therefor, independently of the limitations contained in the act of the General Assembly, then these bonds are simply void, having been issued without authority of law and the action of the county officers in issuing them is *ultra vires* and imposes no liability on the county, not even in the hands of a holder for a valuable consideration.

It is true bonds issued by a county or other municipal corporation under express authority are negotiable with all the qualities and incidents of negotiability.

But if issued without authority, although in the form of negotiable bonds, the holder acquires no right to enforce payment of such bonds, because invalid even in the hands of innocent holders. Having been issued without authority of law and void in their inception, the original vice of their creation adheres to them wherever they may go, and this want of power to issue them can always be set up as a defense against a recovery on them. Dil. Mun. Bonds, 15.

The holders of these bonds have no cause to complain, for they were bound to take notice of the action and proceedings of the County Court, and the conditions under which they were issued.

This case is like that of *English & Wilshire* v. *Chicot County*, 26 Ark., 454, and we have reached conclusions similar to those of the court in that case; we are therefore of opinion:

*First*—That the bond sued upon was issued solely on the credit of the internal improvement fund of Chicot County, to which fund the holder of the bond can alone look for payment.

*Second*—But if treated as a bond payable out of the general funds of the couuty, then it is absolutely void, and imposes no obligation on the county to pay it.

Let the judgment of the Circuit Court be affirmed.